[Civil No. 4725.   Filed July 3, 1945.]

[160 Pac. (2d) 326.]

WILLIAM J. MASON, JR., and OUIDA MASON, Appellants, v. SCOTT ELLISON and CLYMENA ELLISON, Appellees.

Messrs. Kramer, Morrison, Roche and Perry, for Appellants.

Messrs. Phillips, Holzworth, Phillips and Jones, for Appellees.

PATTERSON, Superior Judge.—William J. Mason and Ouida Mason, his wife, appellants, brought this action against Scott Ellison and Clymena Ellison, his wife, appellees, and others for the purpose of establishing appellants' estate to lot 5, block 12, Avalon Annex, situate in Maricopa County, Arizona.

In 1938, appellee Scott Ellison purchased an unimproved lot, which is involved in this action, from a man by the name of Skinner, for the sum of $200. Thereafter, appellees built a five room brick and stucco house on the lot at a cost of $2300, which they later sold, under contract, to one Curtis for $2700. Curtis took possession of the premises on or about October 15, 1941, paid $275 on the purchase price and remained in possession until April, 1942, at which time he made arrangements to sell his equity to appellants. On April 22, 1942, an escrow was set up between appellants and appellees, whereby appellants agreed to purchase the property from appellees for $2700, less $275 theretofore paid by Curtis. Mr. Curtis agreed with Mason to accept $250 for his equity, which amount Mason had deposited with the escrow agent. Appellants took possession of the premises when the escrow was set up in April, 1942.

It appears from the evidence that Scott Ellison at one time was in possession of the necessary deeds to complete his chain of title which had been left in possession of his attorney. Prior to January, 1942, it was discovered that, arising out of the death of his

then attorney, the deeds could not be located in his attorney's office. It then became necessary to attempt to secure deeds to replace the misplaced ones. Particularly a deed from Mrs. Renaud, in whose name the title appears to have been vested of record at the time of setting up the escrow. Ellison had endeavored to locate Mrs. Renaud over a period of time after the escrow was entered into in order to obtain from her a deed to replace the one that was lost while in possession of appellees' attorney.

On June 9, 1942, the Realty Title and Escrow Company, which we shall hereafter call the Escrow Company, obtained a treasurer's deed to the premises on account of delinquent taxes for the last half of the year 1930. Appellees testified they had no knowledge of delinquent taxes for years prior to 1939. In July appellants learned of the acquisition of the deed by the Escrow Company. On September 14 appellants received a letter from the Escrow Company, advising in substance that it was the owner of the premises involved in this action, together with demand that appellants surrender possession of the premises by September 21, 1942. On September 22 appellants obtained a quitclaim deed from the Escrow Company, in their favor, for the sum of $500. On September 28 appellants gave notice of termination of the escrow heretofore mentioned. On March 10, 1943, appellees recorded their deed from Skinner. On July 26, 1943, appellants filed their action to quiet title to the premises involved against appellees and others, alleging ownership and praying that title be quieted in appellants.

The trial court quieted title in appellants as against all of the individual defendants except Scott Ellison and his wife, appellees herein, and quieted title as against them, conditioned upon appellants paying to them something over $1500 and interest, which was the balance remaining due on the $2700 sale price

after allowing appellants credit for all expenditures made in connection with this litigation and acquisition of the quitclaim deed from the Escrow Company and the $250 due for the Curtis equity. A lien was granted appellees upon the property to secure the payment of the balance of money due.

Appellants have appealed from that portion of the decree which makes their judgment conditioned upon their making payment to the appellees of the balance directed by the judgment to be paid and giving appellees a lien against the property for such payment.

Appellants contend that a valid tax deed clothes the grantee with a new and complete title under an independent grant from the sovereign authority of the state. In support of this contention the cases of *Santos* v. *Simon,* 60 Ariz. 426, 138 Pac. (2d) 896, and *Hallenbeck* v. *Yuma County,* 61 Ariz. 160, 145 Pac. (2d) 837, are cited. These cases are not applicable here for the reasons hereinafter stated.

Appellants further contend: (1) That a purchaser from one who is without title is not estopped to acquire title from the true owner; (2) that where the seller fails or refuses to perform his part of the contract the purchaser is not estopped to acquire the title elsewhere; (3) that where the vendor lost his title by an execution against him, the vendee may purchase from the party who acquired the title at execution sale. These propositions will be considered together as the facts must be considered as a whole, and are governed by principles of equity by reason of the nature of the action.

This is a quiet-title action brought by appellants against appellees, whose relationship was that of vendor and purchaser under a signed written executory agreement for the sale of realty, the Phoenix Title and Trust Company acting as escrow agent. The rules and maxims relating to the standing of a party who claims relief in equity generally are applicable

in suits to quiet title. Thus, in order to be entitled to relief, the complainant must come into court with clean hands and establish a superior right or equity. Also, he who seeks equity must do equity. 44 Am. Jur. 52, 53, Sections 67, 68, Quieting Title.

The undisputed evidence shows that appellants took possession of the property in April, 1942, under an executory contract at an agreed price of $2700, and continuously remained in possession until the trial of the cause on March 9, 1944. In July, 1942, appellants learned that the Escrow Company had obtained a treasurer's deed to the premises on account of delinquent taxes for the last half of the year 1930, and received notice to surrender possession of the premises on September 21, 1942. On the following day, before the relation of vendor and purchaser had been terminated under the executory contract and while in possession of the premises, appellants obtained a quitclaim deed from the Escrow Company for the sum of $500. Six days thereafter, on September 28, appellants gave notice of termination of the escrow agreement by reason of vendor not furnishing good title up to that time. The escrow agreement provided that buyer might terminate at his election on account of breach by giving ten days' notice if vendor had not complied with his part of the agreement within thirty days from date of the contract.

█ The law is well established that a purchaser of real estate, or an interest in real estate, under an executory contract of sale, who is in possession thereof, cannot acquire an adverse interest so long as he holds possession, and if he does so acquire such interest it will inure to the benefit of his vendor. He is estopped to set it up adversely to the vendor, and of course, in order to have the advantage of it, the vendor will have to pay the cost of securing same. *Lawrence* v. *Kennedy*, 90 W. Va. 209, 111 S. E. 142;

*Gibbs* v. *Basham,* 53 Ariz. 357, 89 Pac. (2d) 630; *Smith* v. *Boyer,* 72 W. Va. 632, 78 S. E. 787, 46 L. R. A., N. S., 209; 66 C. J. 1032, sec. 779, Vendor and Purchaser. The same rule applies as to a tax title founded on taxes due at the time of the contract. *Baily* v. *Doolittle,* 24 Ill. 577, 578; *Cowdry* v. *Cuthbert,* 71 Iowa, 733, 29 N. W. 798; *Curran* v. *Banks,* 123 Mich. 594, 82 N. W. 247; Smith v. Boyer, *supra;* *Eaton* v. *Tallmadge,* 22 Wis. 526; 27 R. C. L. 548, sec. 284. There are special exceptions to this rule but appellants do not come within any of them. This court held in the case of Gibbs v. Basham, *supra,* that where a party went into actual possession of the premises under a lease or executory contract which he acquired from the plaintiff, that he is not permitted, while he retains possession of the premises, to deny that the title to the property was in the plaintiff, nor to set up a superior title either in himself or in a third party.

██ The facts in the instant case show that the appellants took and held possession of the premises under an executory contract, and before they elected to terminate the contract and give up possession they acquired title from a third party, the Escrow Company. In view of these facts the title so acquired by appellants inured to the benefit of the appellees. Furthermore, appellants were estopped from attacking appellees' title as long as they remained in possession of the premises, under the facts and circumstances in this particular case. Lawrence v. Kennedy *supra;* Gibbs v. Basham, *supra.*

█ The issues presented in the briefs by the respective parties to this appeal do not deal with estoppel. However, in the case of *Munger* v. *Boardman,* 53 Ariz. 271, 88 Pac. (2d) 536, this court held that although the issue of estoppel was not raised in any manner by the parties, nor considered by the trial judge, yet if there is anything appearing in the rec-

ord which suggests that it could have been raised, the appellate court should consider the issue as though it had been raised and determined in the lower court and may determine the appeal on such issue.

However, in view of the fact that appellees did not expressly rely upon estoppel but do offer to do equity, and considering the best interest of all the parties concerned, we deem it proper to make a final disposition of the matter by considering appellants' final proposition of law which is:

"The court cannot make a contract for the parties in accordance with its idea of what the contract should have been."

That portion of the judgment objected to provides, in substance, that appellants are the owners in fee simple as against appellees, subject, however, and conditioned upon:

" . . . payment by the plaintiffs to the defendants, Scott Ellison and Clymena Ellison, of the sum of One Thousand Five Hundred Fifty-eight Dollars and Seventeen Cents ($1,558.17), together with interest on said sum at the rate of six per cent per annum from April 22, 1942, until paid, said sum to be paid in the following manner to-wit: . . . ."

The remainder of the decree directs payment at the rate of $25 per month. The sum of $1558.17 to be paid was arrived at after deducting from the sale price of $2700, which appellants agreed to pay for the property, the amount due Curtis in the sum of $250, and every other expenditure that had been incurred or made by appellants, including the $500 paid for the quitclaim deed.

It would be inequitable for the trial court to have permitted the appellants to have acquired the property under the circumstances and enrich themselves without compensating appellees for the property, less any amounts expended by appellants or

credits due them. The proper question to be considered in this apppeal under proposition 6 is, May a court of equity make a conditional decree? In an equity case the court

" . . . adapts its relief and molds its decrees to satisfy the requirements of the case and to conserve the equities of the parties litigant. The court has such plenary power since its purpose is the accomplishment of justice amid all of the vicissitudes and intricacies of life. . . . ."

19 Am. Jur. 123, sec. 123, Equity.

■■ When a court of equity renders a conditional decree it is not making a contract between the parties. It is simply adjusting the equities between the parties and granting to one or the other certain relief to which the litigants may be entitled, provided one or the other complies with certain directions given by the court in order to properly administer equity and effect justice. Equity decrees in this respect are numerous: *Arizona Trust Co.* v. *Leggett*, 59 Ariz. 198, 124 Pac. (2d) 775; *Farrell* v. *West*, 57 Ariz. 490, 114 Pac. (2d) 910; *Henderson* v. *Arkansas*, 71 Okl. 253, 176 Pac. 751; *Cosden Oil & Gas Co.* v. *Hendrickson*, 96 Okl. 206, 221 Pac. 86; *Stoffela* v. *Nugent*, 217 U. S. 499, 30 Sup. Ct. 600, 54 L. Ed. 856.

The trial court by its judgment adjusted the equities of the parties to this action most fairly, giving to each that to which they were equitably entitled.

The judgment is affirmed.

STANFORD, C. J., and MORGAN, J., concur.

Note: Justice LaPRADE being disqualified, the Honorable W. E. PATTERSON, Judge of the Superior Court of Yavapai County, was called to sit in his stead.