661 P.2d 196

**In re the Marriage of Margrethe May PYEATTE, Petitioner-Appellee,**

v.

**H. Charles PYEATTE, Respondent-Appellant.**

**No. 1 CA–CIV 5191.**

Court of Appeals of Arizona, Division 1, Department B.

Oct. 28, 1982.

Rehearing Denied Feb. 10, 1983.

Review Denied March 22, 1983.

Favour & Quail, P.A. by Keith F. Quail, Prescott, for petitioner-appellee.

Boyle, Brown, Eaton & Pecharich by William Lee Eaton, Prescott, for respondent-appellant.

OPINION

CORCORAN, Judge.

This is an appeal by the husband from an award of $23,000 in favor of the wife as ordered in a decree of dissolution. Two issues are before us: (1) The validity of an oral agreement entered into by the husband and wife during the marriage, whereby each spouse agreed to provide in turn the sole support for the marriage while the other spouse was obtaining further education; and, (2) whether the wife is entitled to restitution for benefits she provided for her husband's educational support in a dissolution action which follows closely upon the husband's graduation and admission to the Bar. The word "agreement" is used as a term of reference for the stated understanding between the husband and wife and not as a legal conclusion that the agreement is enforceable at law as a contract.

The husband, H. Charles Pyeatte (appellant), and the wife, Margrethe May Pyeatte (appellee), were married in Tucson on December 27, 1972. At the time of the marriage both had received bachelors degrees. Appellee was coordinator of the surgical technical program at Pima College. Appellant was one of her students. In early 1974, the parties had discussions and reached an agreement concerning postgraduate education for both of them.

Appellee testified that they agreed she "would put him through three years of law school without his having to work, and when he finished, he would put [her] through for [her] masters degree without [her] having to work."

Appellant concedes the existence of an agreement. Although there was a claim by appellant that his agreement with appellee was qualified by certain contingencies, there is substantial evidence in the record to support the findings made by the trial court after the trial:

> The Court is of the opinion that there was a definite agreement that the respondent [appellant] would pay for the support of petitioner [appellee] while the petitioner [appellee] obtained her master's degree without her having to work. The Court is further of the opinion that there was no contingency expressed or implied that this would not be carried out or enforced in the event of a divorce. Petitioner [appellee] carried out her part of the agreement in supporting the respondent [appellant] while he obtained his law degree.

Appellant attended law school in Tucson, Arizona, from 1974 until his graduation. He was admitted to the State Bar shortly thereafter.

During appellant's first two years of law school appellee supported herself and appellant on the salary she earned at Pima College. During the last year, appellee lost her job, whereupon savings were used to support the couple. Although each spouse contributed to the savings, a significant amount was furnished by appellee.

After appellant's admission to the Bar, the couple moved to Prescott, Arizona, where appellant was employed by a law firm. Both parties realized that appellant's salary would not be sufficient to support the marriage and pay for appellee's education for a masters degree simultaneously. Appellee then agreed to defer her plans for a year or two until her husband got started in his legal career. In the meantime, she obtained part-time employment as a teacher.

In April, 1978, appellant told appellee that he no longer wanted to be married to her, and in June of 1978, she filed a petition for dissolution. Trial was had in March of 1979, and a decree of dissolution was granted. At the time of the trial, there was little community property and no dispute as to division of any community or separate property. Spousal maintenance was neither sought by nor granted to appellee.

The trial court determined that there was an agreement between the parties, that appellee fully performed her part of that agreement, that appellant had not performed his part of the agreement, and that appellee had been damaged thereby.

Based on appellee's expert testimony on the cost of furthering *her* education, in accordance with the agreement, the trial court awarded judgment of $23,000 against appellant as damages for breach of contract, with additional directions that the judgment be payable through the court clerk on a quarterly basis in a sum of not less than ten percent of appellant's net quarterly income.

The trial court directed appellant to use his best efforts to produce income and to keep accurate records of his income-producing activities, which records would be available to appellee upon request but not more frequently than on a quarterly basis. The court also retained jurisdiction of the case for the purpose of supervising the administration of the payment of the judgment and the keeping of records by the appellant. Appellant filed a timely notice of appeal from the judgment.

On appeal, appellant argues that the agreement did not rise to the level of a binding contract because, among other things, the terms thereof were not definite and could not be legally enforced.

Appellee advances three theories as grounds upon which the trial court's award should be upheld:

1. The agreement between the parties was a binding contract. Appellant's failure to perform after appellee had fully performed her obligations renders appellant liable in damages.

2. Appellant's education was obtained through the exhaustion of the community resources. Appellee argues that her financing of appellant's education was an extraordinary expenditure and that the trial court's award should be sustained as a lien upon appellant's separate estate to the extent of those expenditures pursuant to A.R.S. § 25–318.

3. If the agreement is not enforceable as a binding contract, appellee is nevertheless entitled to restitution in quantum meruit to prevent appellant's unjust enrichment because he received his education at appellee's expense.

We will address each argument in turn.

### *The Contract Claim*

■ Although the terms and requirements of an enforceable contract need not be stated in minute detail, it is fundamental that, in order to be binding, an agreement must be definite and certain so that the liability of the parties may be exactly fixed. Terms necessary for the required definiteness frequently include time of performance, place of performance, price or compensation, penalty provisions, and other material requirements of the agreement. 17 C.J.S. *Contracts* § 36(2) at 647–61 (1963); 17 Am.Jur.2d *Contracts* § 75 at 413–15 (1964). In *Savoca Masonry Co. v. Homes and Son Construction Co.,* 112 Ariz. 392, 542 P.2d 817 (1975), the court found that a contractual relationship based upon an oral agreement did not exist between a general contractor and a subcontractor because

"[o]nly the price and work involved were agreed upon; other provisions which might in the end have proven critical were not." 112 Ariz. at 395, 542 P.2d at 820.

■ Upon examining the parties' agreement in this instance, it is readily apparent that a sufficient mutual understanding regarding critical provisions of their agreement did not exist. For example, no agreement was made regarding the time when appellee would attend graduate school and appellant would be required to assume their full support. Both parties concede that appellee could not have begun her masters program immediately after appellant's graduation because his beginning salary was not sufficient to provide both for her education and the couple's support. Appellee told appellant she was willing to wait a year or two until he "got on his feet" before starting her program. Nothing more definite than that was ever agreed upon. Furthermore, although appellee agreed to support appellant while he attended law school for three years, no corresponding time limitation was placed upon her within which to finish her education. Even if we assume that the agreement contemplated appellee's enrolling as a full-time student, the length of time necessary to complete a masters degree varies considerably depending upon the requirements of the particular program and the number of classes an individual elects to take at one time. Such a loosely worded agreement can hardly be said to have fixed appellant's liability with certainty.

The agreement lacks a number of other essential terms which prevent it from becoming binding. Appellee's place of education is not mentioned at all, yet there are masters programs available throughout the country. Whether or not they would be required to relocate in another state should she choose an out-of-state program was not agreed upon. Appellant testified at trial that "that particular problem was really never resolved." Nor was there any agreement concerning the cost of the program to which appellee would be entitled under this agreement. There can be several thousand

dollars' difference in tuition, fees, and other expenses between any two masters programs depending upon resident status, public versus private institutions, and other factors. Appellant testified that at the time of the "contract," neither he nor his wife had any idea as to the specific dollar amounts that would be involved.

Since the trial court found that there was no "contingency expressed or implied" regarding the enforceability of the agreement in the event of a dissolution, the appellant asserts that the absence of such a mutual understanding further demonstrates the lack of specificity. A resolution of that issue is not necessary for a determination of this case.

Appellee urges us to enforce this agreement because contracts should be interpreted, whenever reasonable, in such a way as to uphold the contract, and that this is particularly true where there has been performance by one party. We are aware of these general legal concepts, and also note that reasonableness can be implied by the courts when interpreting agreements. *Shattuck v. Precision-Toyota, Inc.,* 115 Ariz. 586, 566 P.2d 1332 (1977); *Employer's Liability Assurance Corp. v. Lunt,* 82 Ariz. 320, 313 P.2d 393 (1957); *Malcoff v. Coyier,* 14 Ariz.App. 524, 484 P.2d 1053 (1971).

The court's function, however, cannot be that of contract maker. *Savoca Masony Co. v. Homes and Son Construction Co., supra.* Nor can the court create a contract simply to accomplish a purportedly good purpose. *Stearns-Roger Corp. v. Hartford Accident and Indemnity Co.,* 117 Ariz. 162, 571 P.2d 659 (1977). Our review of the record persuades us that the essential terms and requirements of this agreement were not sufficiently definite so that the obligations of the parties to the agreement could be determined:

> A party will not be subjected to a contractual obligation where the character of that obligation is so indefinite and uncertain as to its terms and requirements that it is impossible to state with certainty the obligations involved.

*Aztec Film Productions v. Tucson Gas and Electric Co.,* 11 Ariz.App. 241, 243, 463 P.2d 547, 549 (1969).

Based on its ruling that the agreement was enforceable, the trial court awarded appellee $23,000, the amount established by expert testimony as necessary to further her education in accordance with the agreement. On the basis of our determination that the agreement in this case is unenforceable, there can be no recovery for amounts necessary to further appellee's education.

Having decided that the agreement was not enforceable for the reasons stated above, we need not consider appellant's other arguments regarding that issue.

### Statutory Reimbursement under A.R.S. § 25–318

Appellee advances as the first "equitable" basis for sustaining the award the argument that she is entitled to reimbursement of her expenditures for appellant's legal education under A.R.S. § 25–318. This section provides in part that the court, in disposing of property in a dissolution, may consider "excessive or abnormal expenditures ... of community, joint tenancy and other property held in common."

She contends that appellant left the marriage with an asset—his legal education—which was obtained by the exhaustion of the community. Appellee argues that her husband's education was an extraordinary expenditure which inured to his benefit and for which she paid and that she is entitled to equitable reimbursement in the form of a lien upon appellant's separate estate under A.R.S. § 25–318. We do not agree. A.R.S. § 25–318 concerns disposition of property, and we have already decided that one spouse's education cannot be characterized as property to be divided between the parties. *Wisner v. Wisner,* 129 Ariz. 333, 631 P.2d 115 (App.1981).

The question of characterizing education and professional degrees or licenses as marital property is one which has been addressed in the context of dissolution in this and a number of other jurisdictions. This

court in *Wisner* adopted the view of the majority of those jurisdictions which have considered the issue and rejected the argument that an educational degree, professional license or the increased earning potential each represents is community property subject to valuation and division upon dissolution.

## The Restitution Claim

Appellee's last contention is that the trial court's award should be affirmed as an equitable award of restitution on the basis of unjust enrichment. She argues that appellant's education, which she subsidized and which he obtained through the exhaustion of community assets constitutes a benefit for which he must, in equity, make restitution. This narrow equitable issue is one of first impression in this court. We first addressed the broad outlines of the problem in *Wisner,* but in the context of significantly different facts and legal theories. Our recognition of the disparate considerations involved in a case such as the one before us led us to limit our holding in *Wisner* to its facts. 129 Ariz. at 341, 631 P.2d at 123.

■ Restitution is available to a party to an agreement where he performs services for the other believing that there is a binding contract.

When Restitution for Services is Granted.

A person who has rendered services to another or services which have inured to the benefit of another . . . is entitled to restitution therefor if the services were rendered

. . . .

(b) To obtain the performance of an agreement with the other therefor, not operative as a contract, or voidable as a contract and avoided by the other party after the services were rendered, the one performing the services erroneously believing because of a mistake of fact that the agreement was binding upon the other. . . .

*Restatement of Restitution* § 40(b) at 155 (1937).

■ In order to be granted restitution, appellee must demonstrate that appellant received a benefit, that by receipt of that benefit he was unjustly enriched at her expense, and that the circumstances were such that in good conscience appellant should make compensation. *John A. Artukovich & Sons v. Reliance Truck Co.,* 126 Ariz. 246, 614 P.2d 327 (1980); *Restatement of Restitution* § 1 at 13 (1937). In *Artukovich,* the Supreme Court discussed unjust enrichment.

Contracts implied-in-law or quasi-contracts, also called constructive contracts, are inferred by the law as a matter of reason and justice from the acts and conduct of the parties and circumstances surrounding the transactions . . . and are imposed for the purpose of bringing about justice without reference to the intentions of the parties. . . .

Restatement of Restitution § 1 provides, "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." Comment (a) to that section notes that a person is enriched if he received a benefit and is unjustly enriched if retention of that benefit would be unjust. Comment (b) defines a benefit as being any form of advantage. . . .

. . . .

Unjust enrichment does not depend upon the existence of a valid contract, . . . nor is it necessary that plaintiff suffer a loss corresponding to the defendant's gain for there to be valid claim for an unjust enrichment. . .

126 Ariz. at 248, 614 P.2d at 329.

■ A benefit may be any type of advantage, including that which saves the recipient from any loss or expense. *See Artukovich, supra.* Appellee's support of appellant during his period of schooling clearly constituted a benefit to appellant. Absent appellee's support, appellant may not have attended law school, may have been forced to prolong his education because of intermittent periods of gainful employment, or may have gone deeply into debt. Relieved of the necessity of supporting himself, he

was able to devote full time and attention to his education.

The mere fact that one party confers a benefit on another, however, is not of itself sufficient to require the other to make restitution. Retention of the benefit must be unjust.

Historically, restitution for the value of services rendered has been available upon either an "implied-in-fact" contract or upon quasi-contractual grounds. D. Dobbs, *Remedies* § 4.2 at 237 (1973); 1 Williston, *Contracts* § 3 and 3A at 10–15 (3d ed. 1957). An implied-in-fact contract is a true contract, differing from an express contract only insofar as it is proved by circumstantial evidence rather than by express written or oral terms. *United States v. O. Frank Heinz Construction Co.,* 300 F.Supp. 396 (D.C.Ill.1969); *Plumbing Shop, Inc. v. Pitts,* 67 Wash.2d 514, 408 P.2d 382, 383 (1965). In contrast, a quasi-contract is not a contract at all, but a duty imposed in equity upon a party to repay another to prevent his own unjust enrichment. The intention of the parties to bind themselves contractually in such a case is irrelevant. 1 Williston, *Contracts* § 3A at 12–15 (3d ed. 1957). To support her claim for restitution on the basis of an implied-in-fact contract, appellee must demonstrate the elements of a binding contract. For the reasons we have previously discussed, we cannot find the necessary mutual assent or certainty as to the critical terms of the agreement sufficient to establish such a contract. *See also Osborn v. Boeing Airplane Co.,* 309 F.2d 99 (9th Cir.1962).

Restitution is nevertheless available in quasi-contract absent any showing of mutual assent. While a quasi-contractual obligation may be imposed without regard to the intent of the parties, such an obligation will be imposed only if the circumstances are such that it would be unjust to allow retention of the benefit without compensating the one who conferred it. *See* Williston, *supra.* One circumstance under which a duty to compensate will be imposed is when there was an expectation of payment or compensation for services at the time they were rendered.

> [A]n obligation to pay, ordinarily, will not be implied in fact or by law if it is clear that there was indeed no expectation of payment, that a gratuity was intended to be conferred, that the benefit was conferred officiously, or that the question of payment was left to the unfettered discretion of the recipient.

*Osborn v. Boeing Airplane Co.,* 309 F.2d at 102.

Although we found that the spousal agreement failed to meet the requirements of an enforceable contract, the agreement still has importance in considering appellee's claim for unjust enrichment because it both evidences appellee's expectation of compensation and the circumstances which make it unjust to allow appellant to retain the benefits of her extraordinary efforts.

We next address the question of whether restitution on the basis of unjust enrichment is appropriate in the context of the marital relationship. No authority is cited to the court in support of the proposition that restitution as a matter of law is inappropriate in a dissolution proceeding. In *Wisner,* we observed that "[i]n our opinion, unjust enrichment, as a legal concept, is not properly applied in the setting of a marital relationship." 129 Ariz. at 341, 631 P.2d at 123. Our observation was directed to the wife's claim in that case for restitution for the value of her *homemaking services* during the couple's 15-year marriage and for the couple's reduced income during the husband's lengthy training period. Where both spouses perform the usual and incidental activities of the marital relationship, upon dissolution there can be no restitution for performance of these activities. *Ibid.* Where, however, the facts demonstrate an agreement between the spouses and an extraordinary or unilateral effort by one spouse which inures solely to the benefit of the other by the time of dissolution, the remedy of restitution is appropriate.

Arizona courts have traditionally utilized the equitable restitutionary device of the constructive trust to prevent unjust

enrichment between spouses upon dissolution when there is property to which such a trust may attach. *See, e.g., Dawson v. McNaney,* 71 Ariz. 79, 223 P.2d 907 (1950); *Harmon v. Harmon,* 126 Ariz. 242, 613 P.2d 1298 (App.1980); *Chirekos v. Chirekos,* 24 Ariz.App. 223, 537 P.2d 608 (1975). We see no reason in law or equity why restitution should not be available in an appropriate circumstance to prevent the unjust enrichment of a spouse when a constructive trust is not available, as here, when no property exists. We analogize the two restitutionary devices solely to the extent of illustrating their common essence—prevention of the unjust enrichment of one spouse at the expense of the other.

A number of jurisdictions have addressed the issue of restitution in the context of the marital relationship. The cases which have dealt with the issue involve two factual patterns: (1) The first group consists of those cases in which the couples had accumulated substantial marital assets over a period of time from which assets the wife received large awards of property, maintenance and child support. The courts have refused to apply the theory of restitution on the basis of unjust enrichment in each of these cases. (2) The second group consists of those cases in which the parties are divorced soon after the student spouse receives his degree or license and there is little or no marital property from which to order any award to the working spouse.

In the first group the courts have consistently refused to find a property interest in the husband's education, degree, license or earning capacity or to order restitution in favor of the wife. Because restitution is a matter of equity, the circumstances of these cases preclude at the outset any basis for a finding of inequitable circumstances sufficient to support restitution inasmuch as the wife in each case had received substantial awards of the marital assets and was seeking, in addition to those assets, a property interest in the husband's education, degree, license or earning capacity. Because the property award itself is largely the product of the education, degree, license or earning capacity in which the wife sought a monetary interest, the courts hold that the wife realized her "investment" in the husband's education by having received the benefits of his increased earning capacity during marriage and by receipt of an award of property upon its dissolution. *Wisner, supra; Lucas v. Lucas,* 27 Cal.3d 808, 166 Cal.Rptr. 853, 614 P.2d 285 (1980), overruling in part on other grounds, *Aufmuth v. Aufmuth,* 89 Cal.App.3d 446, 152 Cal.Rptr. 668 (1979); *Todd v. Todd,* 272 Cal.App.2d 786, 78 Cal.Rptr. 131 (1969); *Stern v. Stern,* 66 N.J. 340, 331 A.2d 257 (1975); *Frausto v. Frausto,* 611 S.W.2d 656 (Tex.Civ.App.1980).

In *Wisner,* the wife had concededly not made any monetary contribution to her husband's medical education. The parties had married during the husband's final year of medical school and during their 15-year marriage the wife had devoted herself exclusively to homemaking activities. The wife, nevertheless, sought reimbursement "because of her husband's *reduced income* during his education and [his eight-year] training period, and *for her part* in the joint effort of the community in obtaining that education." 129 Ariz. at 340, 631 P.2d at 122 (emphasis added).

We rejected her claim for reimbursement, finding that her contributions to the husband's education; i.e., her homemaking services, were not separately compensable. We stated:

> In each marriage, for example, the couple decides on a certain division of labor, and while there is a value to what each spouse is doing, whether it be labor for monetary compensation or homemaking, that value is consumed by the community in the on-going relationship and forms no basis for a claim of unjust enrichment upon dissolution.

129 Ariz. at 341, 631 P.2d at 123.

The second group presents the more difficult problem of the "working spouse" claiming entitlement to an equitable recovery where there is little or no marital property to divide and therefore the conventional remedies of property division or spousal maintenance are unavailable. The emerg-

ing consensus among those jurisdictions faced with the issue in this factual context is that restitution to the working spouse is appropriate to prevent the unjust enrichment of the student spouse. *See Inman v. Inman,* 578 S.W.2d 266 (Ky.1979); *DeLa Rosa v. DeLa Rosa,* 309 N.W.2d 755 (Minn. 1981); *Hubbard v. Hubbard,* 603 P.2d 747 (Okl.1979); *Lundberg v. Lundberg,* 107 Wis.2d 1, 318 N.W.2d 918 (1982); *Contra, In re Marriage of Graham,* 194 Colo. 429, 574 P.2d 75 (1978).

Although in *Wisner* we dealt with the first group described above; i.e., a marital community with substantial accumulated assets, we anticipated the second type of case in which (1) the community estate is consumed by the education of the husband which was obtained in substantial measure by the efforts and sacrifices of his wife; (2) the working wife is not entitled to spousal maintenance, having demonstrated an ability to support not only herself but her husband as well; and (3) the divorce follows closely·upon the husband's completion of his education before the community realizes any benefit from that education and before the working spouse is able to further her own education and thus increase her own earning capacity. We stated in *Wisner:*

> [A]n important factor to consider in the overall picture is the extent to which the non-license or degree holder has already or otherwise benefitted financially during coverture from his or her spouse's earning capacity. The rather common situation in which one spouse puts the other through professional school, followed closely by a dissolution upon the completion of schooling, is perhaps the clearest picture of the injustice which may evolve. In that situation, the spouse who has devoted much of the product of several years of labor to an "investment" in future family prosperity is barred from any return on his or her investment, while the other spouse has received a windfall of increased earning capacity. However, the acquisition of a considerable estate obviously solves this problem. Such is the situation here. Wife shared in the fruits of husband's education for many

years during their marriage, and ultimately realized a value therefrom by a substantial award to her of the community assets, plus spousal maintenance.

129 Ariz. at 341, 631 P.2d at 122.

The Oklahoma Supreme Court in *Hubbard* held that, while a degree is not "property" subject to valuation and division upon dissolution, equitable relief is not thereby precluded. The court then ordered that the wife be reimbursed in quasi-contract for the amounts she expended during the 12 years in which she supported her husband while he obtained his medical training.

> While it is true that Dr. Hubbard's license to practice medicine is his own to do with as he pleases, it is nonetheless also true that Ms. Hubbard has an equitable claim to repayment for the investment she made in his education and training. To hold otherwise would result in the unjust enrichment of Dr. Hubbard. He would leave the marriage with an earning capacity increased by $250,000 which was obtained in substantial measure through the efforts and sacrifices of his wife. She on the other hand would leave the marriage without either a return on her investment or an earning capacity similarly increased through joint efforts ... All the resources of the marriage had been dissipated on Dr. Hubbard's education. There is no reason in law or equity why Dr. Hubbard should retain the only valuable asset which was accumulated through joint efforts ... free of claims for reimbursement by his wife.

603 P.2d at 750.

The Minnesota Supreme Court in *DeLa Rosa* similarly affirmed an award of restitution to the wife for the financial support she provided her husband while he attended medical school, in a dissolution which occurred shortly after the husband's graduation.

> The case at bar presents the common situation where one spouse has foregone the immediate enjoyment of earned income to enable the other to pursue an

356

advanced education on a full-time basis.
Typically, this sacrifice is made with the
expectation that the parties will enjoy a
higher standard of living in the future.
Because the income of the working
spouse is used for living expenses, there is
usually little accumulated marital proper-
ty to be divided when the dissolution oc-
curs prior to the attainment of the finan-
cial rewards concomitant with the ad-
vanced degree or professional license.
Furthermore, the working spouse is not
entitled to maintenance ... as there has
been a demonstrated ability of self-sup-
port. The equities weigh heavily in favor
of providing a remedy to the working
spouse in such a situation, ...

309 N.W.2d at 758.

The Kentucky Court of Appeals held in
*Inman v. Inman, supra,* that the wife was
entitled to reimbursement for her monetary
contribution to her husband's acquisition of
his dentistry license. Although in *Inman*
the parties had dissolved their marriage af-
ter 17 years and three children and had
enjoyed the fruits of the husband's in-
creased earning capacity for a number of
years, by the time of the dissolution the
couple's debts equalled or exceeded their
assets, in large part due to the husband's
mismanagement. The *Inman* court, never-
theless, found the same equitable considera-
tions cited by the dissenting justices in *Gra-
ham, supra,* to obtain despite the length of
the marriage and the years of realized in-
come. The court stated the measure of
recovery as follows:

[T]he amount spent for direct support
and school expenses during the period of
education, plus reasonable interest and
adjustments for inflation, should be ap-
portioned to the spouse who provided sup-
port when ... there is little or no marital
property acquired through the increased
earning capacity provided by the sup-
ported spouse's degree or training.

578 S.W.2d at 269–270. The Kentucky
court relied on the reasoning of the dissent
in *Graham* in which the three dissenting
justices stated:

As a matter of economic reality the
most valuable asset acquired by either
party during this six-year marriage was
the husband's increased earning capaci-
ty. ...

The case presents the not-unfamiliar
pattern of the wife who, willing to sacri-
fice for a more secure/family financial
future, works to educate her husband,
only to be awarded a divorce decree
shortly after he is awarded his de-
gree. ...

In cases such as this, equity demands
that courts seek extraordinary remedies
to prevent extraordinary injustice.

194 Colo. at 434, 574 P.2d at 78 (dissenting
opinion). *See also Hubbard v. Hubbard,*
603 P.2d at 751.

*McDermott v. McDermott,* 129 Ariz. 76,
628 P.2d 959 (App.1981) decided by Division
Two of this court, is a case which appears to
fall between the first and second categories.
The parties had been married nine and one-
half years at the time of the divorce. The
husband contributed $56,800 to the mar-
riage and the wife contributed $64,100,
which are not greatly disproportionate con-
tributions. The wife completed her bache-
lors degree early in their marriage and the
husband later obtained both his bachelors
and masters degrees. At the time of the
divorce the husband was completing his
doctorate degree and the wife "thought she
would like to go to law school or get a
masters degree in public or business admin-
istration." The parties "contemplated"
that when the husband finished his formal
education, if the wife wanted further edu-
cation, she could do so. At the time of the
divorce, the wife was employed as an ad-
ministrative assistant with the City of Tuc-
son. The court determined that the use of
spousal maintenance pursuant to A.R.S.
§ 25–319 was inappropriate to give the
wife an "equal opportunity" for educational
pursuits. The majority, however, did not
consider whether the wife would be entitled
to recover restitution from the husband be-
cause of unjust enrichment.

The record shows that the ap-
pellee conferred benefits on appellant—fi-

nancial subsidization of appellant's legal education—with the agreement and expectation that she would be compensated therefor by his reciprocal efforts after his graduation and admission to the Bar. Appellant has left the marriage with the only valuable asset acquired during the marriage—his legal education and qualification to practice law. It would be inequitable to allow appellant to retain this benefit without making restitution to appellee. However, we need not decide what limits or standards would apply in the absence of an agreement. Commentators have discerned in various statutory enactments and the developing case law a renewed and expanded recognition of marriage's economic underpinnings. See Comment, *The Interest of the Community in a Professional Education,* 10 Calif.W.L.Rev. 590 (1974); Erickson, *Spousal Support Toward the Realization of Educational Goals: How the Law Can Ensure Reciprocity,* 1978 Wis.L.Rev. 947. By our decision herein, we reject the view that the economic element necessarily inherent in the marital institution (and particularly apparent in its dissolution) requires us to treat marriage as a strictly financial undertaking upon the dissolution of which each party will be fully compensated for the investment of his various contributions. When the parties have been married for a number of years, the courts cannot and will not strike a balance regarding the contributions of each to the marriage and then translate that into a monetary award. To do so would diminish the individual personalities of the husband and wife to economic entities and reduce the institution of marriage to that of a closely held corporation.

### The Measure of Recovery

■ Generally, where claims are made by the working spouse against the student spouse, the trial court in each case must make specific findings as to whether the education, degree or license acquired by the student spouse during marriage involved an unjust enrichment of that spouse, the value of the benefit, and the amount that should be paid to the working spouse. A variety of methods of computing the unjust enrichment may be employed in ascertaining the working spouse's compensable interest in the attainment of the student spouse's education, degree or license.

■ The award to appellee should be limited to the financial contribution by appellee for appellant's living expenses and direct educational expenses. See *DeLa Rosa v. DeLa Rosa,* 309 N.W.2d 755.

Under the agreement between the parties, the anticipated benefit to appellee may involve a monetary benefit in a lesser amount than the benefit conferred by appellee on appellant. In that event, the award to appellee should be limited to the amount of the anticipated benefit to appellee. Appellee should not recover more than the benefit of her bargain. *Restatement of Restitution,* § 107, Comment b, at 449 (1937).

■ Appellant further objects to the judgment of $23,000 against him on the ground that it directs the payment on terms over a period of time. The terms of payment were of benefit only to appellant. If he wanted to pay the judgment in a lump sum, he certainly could do so. In any event, the trial court, in entering an equitable judgment for money, has the authority to order that it be paid in periodic payments plus interest through the clerk of the court in a certain percentage of appellant's net income, and that appellee have the right to review his records to determine the accuracy of the net income calculations.

The relief granted to appellee is equitable in nature. The rule regarding equitable awards is set forth in *Mason v. Ellison,* 63 Ariz. 196, 160 P.2d 326 (1945) in which the Arizona supreme court stated:

> In an equity case the court "... adapts its relief and molds its decrees to satisfy the requirements of the case and to conserve the equities of the parties litigant. The court has such plenary power since its purpose is the accomplishment of justice amid all of the vicissitudes and intricacies of life...."

63 Ariz. at 203, 160 P.2d at 329 (quoting 19 Am.Jur. *Equity* § 123 at 123–24 (1939)).

**358**

The fact that this case presents a novel resolution of a difficult issue, without precedent, will not prevent this court from ordering relief in an amount and manner appropriate to the circumstances.

It is the distinguishing feature of equity jurisdiction that it will apply settled rules to unusual conditions and mold its decrees so as to do equity between the parties.

30 C.J.S. *Equity* § 12 at 798–99 (1965). *See also Ackel v. Ackel,* 57 Ariz. 14, 110 P.2d 238 (1941) in which the court appointed a receiver to hold the community assets of a husband and wife pending dissolution. In holding that the marital dissolution in that case was analogous to a partnership dissolution and would therefore be treated similarly, the court stated:

So far as we know there are no precedents for the course which we have determined upon, but if it is within the general principles of equity the fact that it has never been used before is no argument against its use when justice so requires.

57 Ariz. at 22, 110 P.2d at 242.

The nature of equity is individual justice. Since the benefit bestowed upon appellant by appellee was periodic in nature and dependent on her income, we find no abuse of the equity power of the court in awarding appellee periodic payments, especially where she can use them periodically to pursue her own education. By our affirmance of an instalment method of payment in this case, we do not mean to promulgate a rule that will uniformly govern all awards in subsequent 'cases of that nature. Each will, by virtue of the equitable nature of the claim, require relief tailored to the facts and circumstances of the individuals. *DeLa Rosa v. DeLa Rosa,* 309 N.W.2d at 759, n. 11.

The portion of the judgment in the amount of $23,000 is reversed and remanded for proceedings in accordance with this opinion.

FROEB, Acting P.J., and HATHAWAY, J., concur.

*Note:* The Honorable JAMES D. HATHAWAY, Judge of the Arizona Court of Appeals, Division Two, was authorized to participate by the Chief Justice of the Arizona Supreme Court, pursuant to Arizona Constitution Article VI, Section 3.