FIRST DIVISION
March 26, 2007

No. 1-05-3987

| | |
|---|---|
| MARK PHILLIPS, AARON STONE, TERESA BROWN and STEVEN BENJAMIN, on Behalf of Themselves and All Others Similarly Situated, | ) Appeal from ) the Circuit Court ) of Cook County ) |
| Plaintiffs-Appellants, | ) ) |
| v. | ) No. 04 CH 4619 ) |
| BALLY TOTAL FITNESS HOLDING CORPORATION and BALLY TOTAL FITNESS CORPORATION, | ) ) ) Honorable ) Philip L. Bronstein, |
| Defendants-Appellees. | ) Judge Presiding. |

JUSTICE CAHILL delivered the opinion of the court:

Plaintiffs Aaron Stone of Colorado and Teresa Brown of Missouri appeal from their

dismissal for lack of standing as named plaintiffs in a class action lawsuit against defendants

Bally Total Fitness Holding Corp. and Bally Total Fitness Corp. (collectively, Bally). They also

claim the trial court erred in ordering a stay of discovery that would have allowed them to find a

sufficient nexus with Illinois to establish standing. Plaintiffs Mark Phillips and Steven Benjamin

are not parties to this appeal. Their standing has not been challenged because they are Illinois

residents who joined Bally centers in Illinois.

In 2004 and 2005, the four plaintiffs filed their original and amended class action

complaints, alleging Bally engaged in deceptive and unfair conduct in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2004)), and the Illinois Physical Fitness Services Act (Fitness Act) (815 ILCS 645/10 *et seq.* (West 2004)).

The complaint alleged that defendant Bally Total Fitness Corp. was a wholly owned subsidiary of defendant Bally Total Fitness Holding Corp. and a Delaware corporation with its principal place of business in Chicago. It alleged that Bally maintained its corporate headquarters in Cook County, transacted substantial business in Cook County and committed many of the alleged wrongful acts in Cook County. The complaint asserted that Bally fitness centers had 4 million members, 420 facilities in 29 states and international locations and a "virtual labyrinth of subsidiaries" under a variety of names.

The complaint alleged that Stone joined defendant's Fort Collins, Colorado, fitness center on March 26, 2001. Stone agreed to pay $1,901.40 at 17.34% interest for three years. Stone was told that the contract was month-to-month, could be cancelled at any time and could be transferred to another club if he moved. Stone moved to Denver but found no comparable club in his area. He tried to cancel his membership in writing but defendant refused and demanded full payment. Defendant sent collection letters to Stone approximately every two weeks for the next several months. The letters threatened to sell the "bad debt" to a national recovery agency, which could damage Stone's future credit ratings. Defendant did sell the alleged "bad debt" to collection agencies that threatened Stone with legal action. Defendant allegedly gave negative reports on Stone to national credit bureaus. Exhibits attached to the

complaint include a copy of Stone's retail installment contract which lists the company's address as Lakewood, Colorado. The contract contains a provision that disputes related to contracts are "governed by the laws of the state in which it was signed." Statements and correspondence addressed to Stone from Bally Total Fitness show the return and mailing addresses in Norwalk, California.

The complaint alleged that Brown was a resident of Springfield, Missouri, who joined defendant's St. Louis fitness center in June 1994. The contract Brown signed contained a provision that disputes related to contracts are "governed by the laws of the state in which it was signed." She agreed to pay $1,189.76 at 12% interest for three years. She was told that if she moved, she would be held to her contract only if an alternative program was made available to her. One year later Teresa moved to Columbia, Missouri, and because no fitness center was available, defendant agreed to cancel her contract. Four years later, Brown was contacted by a collection agency, claiming she owed defendant money. The agency accepted her explanation that the contract had been cancelled and she had no obligations. Five years later, another collection agency, Professional Recovery Systems, LLC, obtained a default judgment against Brown in the amount of $1,789.31 and instituted garnishment proceedings with her employer. She retained an attorney and the judgment against her was set aside.

Exhibits attached to the complaint include a copy of Stone's retail installment contract that lists the company's address as Maryland Heights, Missouri. Documents and correspondence from Professional Recovery Systems' breach-of-contract action against Brown show that the actions all took place in Missouri. Attorneys in St. Louis filed defendant's complaint against

Brown in a Missouri circuit court.

Bally moved to dismiss plaintiffs' second amended class action complaint on June 8, 2005, under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2004)). Bally argued that plaintiffs failed to state a claim under section 2-615 of the Code (735 ILCS 5/2-615 (West 2004)). It also moved to dismiss the claims of out-of-state plaintiffs Stone and Brown for lack of standing under section 2-619 of the Code (735 ILCS 5/2-619 (West 2004)). Bally argued that Stone was a resident of Colorado who joined Holiday Health Clubs., Inc., and Brown was a resident of Missouri who joined Vic Tanny of Missouri, Inc. Bally argued that neither company does business in Illinois and both contracts provided that disputes were to be governed by the laws of the state in which they were signed. Bally contended that because plaintiffs signed contracts and allegedly suffered damages in their respective states, there was no nexus with Illinois.

While the case was pending, the Illinois Supreme Court issued <u>Avery v. State Farm Mutual Automobile Insurance Co.</u>, 216 Ill. 2d 100, 187-89, 835 N.E.2d 801 (2005), addressing the issues raised here. Stone and Brown moved to lift the stay on discovery, arguing that the analysis in <u>Avery</u> required the consideration of "a plethora of facts and circumstances" that could not be ascertained unless the court lifted the stay. The trial court denied the motion.

The trial court granted Bally's motion to dismiss Stone and Brown for lack of standing under section 2-619 of the Code (735 ILCS 5/2-619 (West 2004)). The court included in its order a finding of no just reason to delay an appeal of the dismissal under Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)). The court denied defendant's motion under section 2-615 (735

ILCS 5/2-615 (West 2004)) to dismiss the complaint as to Phillips, Benjamin and the class. The court also extended the stay of discovery. Plaintiffs appeal.

Plaintiffs argue that dismissal under section 2-619 was improper because: (1) the supreme court's decision in Avery permits nonresident standing under the Consumer Fraud Act; (2) the trial court's refusal to permit discovery placed the nonresident plaintiffs in an unconscionable bind; and (3) the trial court erred in deciding that the out-of-state plaintiffs' claims did not occur "primarily and substantially" in Illinois.

We review *de novo* a trial court's disposition of a section 2-619 motion for dismissal on the grounds of lack of standing. International Union of Operating Engineers, Local 148 v. Illinois Department of Employment Security, 215 Ill. 2d 37, 45, 828 N.E.2d 1104 (2005).

The statutes at issue are sections 2 and 1(f) of the Consumer Fraud Act and sections 10(a) and 10(b) of the Fitness Act. The Consumer Fraud Act provides consumer protection against:

"[U]nfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, *** in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2 (West 2004).

Section 1(f) of the Consumer Fraud Act provides:

"The terms 'trade' and 'commerce' mean the advertising, offering for sale,

sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." 815 ILCS 505/1(f) (West 2004).

Section 10(a) of the Fitness Act prohibits unfair or deceptive acts and practices. 815 ILCS 645/10(a) (West 2004). Section 10(b) of the Fitness Act provides: "(b) Any contract for physical fitness services entered into in reliance upon any false, fraudulent, or misleading information, representation, notice, or advertisement of the physical fitness center or any of its employees or agents shall be void and unenforceable." 815 ILCS 645/10(b) (West 2004). The Consumer Fraud Act and the Fitness Act are interrelated in that "[a]ny person who knowingly violates *** the Physical Fitness Services Act *** commits an unlawful practice within the meaning of [the Consumer Fraud] Act." 815 ILCS 505/2Z (West 2004).

Plaintiffs first argue that Stone and Brown have standing under Avery which did not strictly preclude nonresident standing or hold that a single factor, including the situs of the deception, is dispositive. Plaintiffs argue that the trial court misapplied the Avery "facts and circumstances" test when it concluded that the events at issue did not occur "primarily and substantially" in Illinois when, in fact, the deceptive policies were devised in and promulgated from Illinois.

Avery involved a class action suit where the plaintiffs represented a nearly nationwide class of State Farm insurance policyholders who asserted breach-of-contract claims. Avery, 216 Ill. 2d at 109. One of the issues was whether the circuit court erred in finding that State Farm

6

had violated the Consumer Fraud Act (815 ILCS 505/2 (West 1998)). Avery, 216 Ill. 2d at 155. The circuit court, in certifying the plaintiff class, determined that the Consumer Fraud Act could, as a matter of statutory interpretation, be applied to members of the plaintiff class who did not reside in Illinois. Avery, 216 Ill. 2d at 160. The appellate court agreed. Avery, 216 Ill. 2d at 165. The supreme court reversed, concluding that "the General Assembly did not intend the Consumer Fraud Act to apply to fraudulent transactions which take place outside Illinois." Avery, 216 Ill. 2d at 185.

The court then conducted an analysis to determine whether the transactions at issue took place inside or outside Illinois. Avery, 216 Ill. 2d at 185. The court acknowledged that it can be difficult to identify the situs of a consumer transaction when parts of it occurred in more than one state. But the place of injury or deception is only one of the relevant circumstances. Avery, 216 Ill. 2d at 185. The court cautioned that focusing solely on the place of injury or deception "can create questionable results." Avery, 216 Ill. 2d at 186. The court concluded: "a fraudulent transaction may be said to take place within a state if the circumstances relating to the transaction occur primarily and substantially within that state." Avery, 216 Ill. 2d at 186.

A private cause of action under the Consumer Fraud Act is allowed "if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." Avery, 216 Ill. 2d at 187. "[T]here is no single formula or bright-line test for determining whether a transaction occurs within this state. Rather, each case must be decided on its own facts." Avery, 216 Ill. 2d at 187. "[T]he critical question in this case becomes whether the circumstances relating to plaintiffs' disputed transactions with State Farm occurred primarily and substantially

7

in Illinois." <u>Avery</u>, 216 Ill. 2d at 187.

The place where a company policy was created may be relevant in establishing the situs of a consumer transaction, but this single factor is not enough to show that the deceptive practice occurred in Illinois. <u>Avery</u>, 216 Ill. 2d at 187. The fact that a scheme to defraud was disseminated from a company's headquarters in Illinois is insufficient. <u>Avery</u>, 216 Ill. 2d at 189, citing <u>Rohlfing v. Manor Care, Inc.</u>, 172 F.R.D. 330, 340 & n.10 (N.D. Ill. 1997) (the Consumer Fraud Act does not apply to the claims of non-Illinois plaintiffs where the sole Illinois connection is the defendant's headquarters or the fact that the scheme to defraud emanated from Illinois). Out-of-state plaintiffs "have no cognizable cause of action under the Consumer Fraud Act" where "the overwhelming majority of the circumstances" pertaining to their claims took place outside Illinois. <u>Avery</u>, 216 Ill. 2d at 188.

Using <u>Avery</u> as our guide, we believe that the record supports a finding that the majority of transactions pertaining to Stone and Brown took place outside Illinois. Stone and Brown resided, bought memberships, signed contracts, used fitness facilities and were subject to the disputed billing and collection practices in states other than Illinois. Correspondence to Stone and Brown about their accounts came from California, not Illinois. Brown's wages were garnished in Missouri. Plaintiffs do not allege that Stone and Brown came to Illinois or spoke to Bally representatives in Illinois. Under <u>Avery</u>, plaintiffs' claim that the deceptive policies were devised in and promulgated from Illinois is not sufficient to establish a nexus with Illinois. <u>Avery</u>, 216 Ill. 2d at 189. While the place where a company's deceptive policy was created is relevant, that alone does not establish that the allegedly fraudulent practices occurred in Illinois.

Avery, 216 Ill. 2d at 187. Stone and Brown have not established that they have standing to pursue a cause of action under the Consumer Fraud Act.

Plaintiffs next argue that the trial court erred in denying its motion to lift its stay of discovery. They claim that if only they had been allowed to engage in further discovery, they could have shown that the disputed transactions occurred primarily and substantially in Illinois. Bally argues that additional discovery was not warranted because the out-of-state plaintiffs had sufficient information to file a 35-page, second amended complaint with 65 pages of exhibits. Bally contends that even if plaintiffs had been allowed additional discovery, the results would not have supported a finding of standing under Avery.

We review a trial judge's decision to limit discovery for an abuse of discretion. People v. Williams, 209 Ill. 2d 227, 234, 807 N.E.2d 448 (2004).

We find no abuse of discretion here. Not only did plaintiffs compile a prodigious complaint and volume of exhibits, but most of the information necessary for an Avery analysis was within plaintiffs' knowledge. The only factor that was arguably unknown to them was exactly where the allegedly deceptive policies or practices were devised. Even if Stone and Brown could show that a scheme to defraud emanated from Illinois, it would be insufficient under Avery for a cause of action under the Consumer Fraud Act. Plaintiffs knew where Stone and Brown resided, the locations of the circumstances leading to their claims, the locations of the alleged deceptions and the locations where they sustained their damages. Plaintiffs did not suffer prejudice as a result of the court's stay of discovery. Additional discovery to embellish plaintiffs' argument that the deceptive practices emanated from Illinois would not have changed the fact no

other Illinois connections could be established for Stone and Brown. The trial court did not abuse its discretion in limiting discovery.

Finally, plaintiffs argue that the phrase "primarily and substantially" is undefined in Illinois, making it impossible for parties and courts to determine whether a party has standing, particularly when discovery is limited. Plaintiffs recommend a "flexible, fact-based protocol" adopted by the Massachusetts Supreme Court in Kuwaiti Danish Computer Co. v. Digital Equipment Corp., 438 Mass. 459, 472, 781 N.E.2d 787, 798 (2003). The Illinois Supreme Court established in Avery the analysis to be used when out-of-state residents attempt to claim a private cause of action under the Consumer Fraud Act. "[E]ach case must be decided on its own facts." Avery, 216 Ill. 2d at 187. There is no need to turn to a foreign jurisdiction for direction.

The judgment of the circuit court is affirmed.

Affirmed.

McBRIDE, P.J., and GARCIA, J., concur.