Leif NELSON, Plaintiff,

v.

MILLERCOORS, LLC and MillerCoors Oil Can Breweries, Defendants.

15–CV–7082 (WFK) (RML)

United States District Court,
E.D. New York.

Signed 03/31/2017

Amy E. Boyle, Melissa W. Wolchansky, Halunen & Associates, Clayton Halunen, Minneapolis, MN, George Volney Granade, II, Michael Robert Reese, Reese LLP, New York, NY, for Plaintiff.

Paul W. Garrity, Shin Young Hahn, Sheppard, Mullin, Richter & Hampton LLP, New York, NY, Sascha Henry, Sheppard Mullin Richter & Hampton, LLP, Los Angeles, CA, for Defendants.

## DECISION & ORDER

WILLIAM F. KUNTZ, II, United States District Judge:

On February 9, 2016, Leif Nelson ("Plaintiff") filed an Amended Putative Class Complaint ("Amended Complaint") against MillerCoors, LLC ("Defendant" or "MillerCoors")[1] setting forth claims for:

---

**1.** Although Plaintiff named both "MillerCoors, LLC" and "MillerCoors Oil Can Breweries" as defendants in this action, MillerCoors Oil Can Breweries is simply a trade name owned by MillerCoors, rather than a separate legal entity. Def.'s Mot. to Dismiss ("MTD") at 1 n.1, ECF No. 16 ("MillerCoors brews and markets Foster's beer in the United States, and Oil Can Breweries is a trade name owned by MillerCoors."); *see also* Pl.'s Mem. Opp'n ("Opp'n") at 1 n.1, ECF No. 18 (noting Plaintiff's agreement to reference "only one Defen-

(1) unfair or deceptive acts in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1. *et seq.*; (2) deceptive acts or practices in violation of New York General Business Law section 349; (3) false advertising in violation New York General Business Law section 350; (4) negligent misrepresentation; (5) fraud; (6) breach of express warranty; and, in the alternative to the aforementioned claims, (7) unjust enrichment. Defendant now moves to dismiss the Amended Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted. For the reasons that follow, Defendant's motion to dismiss is GRANTED.

## BACKGROUND [2]

### I. Facts

Foster's Beer is an Australian-style beer brand owned by MillerCoors, a Delaware corporation headquartered in Chicago, Illinois. Am. Compl. ¶ 4, ECF No. 5. William and Ralph Foster brewed the first batch of Foster's Beer in Melbourne, Australia, in 1887. *Id.* ¶ 6. In 1972, Foster's began exporting beer to the United States in unique containers—25.4 ounces in capacity and shaped like motor oil cans—that earned the nickname "Foster's Oil Cans." *Id.* ¶ 7. The can labels sported "multiple references to Australian culture and symbols," namely "an image of a Red Kangaroo, the national symbol of Australia, and the Southern Cross constellation," which is "a main component on the Australian national flag." *Id.* ¶¶ 16–17. In 2011, Foster's USA LLC assumed responsibility for brewing all Foster's Beer sold in the United States, and relocated the U.S. brewing

facilities, Oil Can Breweries, to Fort Worth, Texas. *Id.* ¶¶ 5, 8–9, 15. All Foster's Beer sold in the United States is thus domestically brewed. *See id.* ¶¶ 8, 15.

In 2012, MillerCoors became the sole owner of Foster's USA LLC. *Id.* ¶ 9. MillerCoors currently offers Foster's Beer in the United States in the classic "25.4 ounce 'Oil Cans,'" as well as "12 ounce bottles, 12 ounce cans, and [o]n draft," among other forms. *Id.* ¶ 12. These bottles and cans of domestically brewed Foster's Beer are "almost identical [in design] to the imported variety that was previously sold." *Id.* ¶ 18.

### II. Procedural History

Plaintiff filed his initial Complaint on February 9, 2016, on behalf of himself and three purported classes of individuals "who purchased Foster's Beer during the applicable liability period for their personal use, rather than for resale or distribution": the "New York Class," the "Multi–State Class," and the "Nationwide Class." *Id.* ¶ 29. The New York Class consists of "[a]ll consumers within the State of New York." *Id.* The Multi–State Class consists of:

> All consumers in Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, the District of Columbia, Georgia, Hawaii, Idaho, Illinois, Indiana, Kansas, Kentucky, Maine, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, or Wyoming . . . .

---

dant"). MillerCoors, LLC is properly considered to be the sole defendant, thus the Court will refer to "Defendant," singular.

**2.** These allegations are either drawn from the Amended Complaint or are properly incorporated into the Amended Complaint and are assumed to be true for the purposes of this motion.

*Id.* The Nationwide Class consists of "[a]ll consumers in the United States and its territories." *Id.* Each class excludes "Defendant's current or former officers, directors, and employees; counsel for Plaintiff and Defendant; and the judicial officer to whom this lawsuit is assigned." *Id.*

The Amended Complaint contains the following causes of action: (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.* (on behalf of the Nationwide Class); (2) violations of New York General Business Law ("GBL") section 349 (on behalf of the New York class); (3) violations of GBL section 350 (on behalf of the New York class); (4) Negligent Misrepresentation (on behalf of the New York and Nationwide Classes); (5) Fraud (on behalf of the New York and Nationwide Classes); (6) Breach of Express Warranty (on behalf of the Multi–State Class); and, in the alternative to the foregoing claims, (7) Unjust Enrichment (on behalf of the Nationwide Class). *Id.* ¶¶ 33–100.

According to Plaintiff, MillerCoors is tricking consumers "into believing they are purchasing the same [imported] product as they had in the past" precisely because it has maintained the same packaging for Foster's over time, despite the fact that the Foster's sold in the United States is also brewed domestically. *Id.* Specifically, Plaintiff contends "[c]onsumers believe they are purchasing beer imported from Australia brewed with Australian ingredients, when, in fact, they are purchasing beer brewed in Fort Worth, Texas, with ingredients from the United States." *Id.* ¶ 2

Part of this confusion, Plaintiff asserts, comes from MillerCoors's "overall marketing campaign, online and in advertisements," *id.* ¶ 20, including: (1) the brand slogan "Foster's Australian for Beer," *id.* ¶ 21; (2) the "How to Speak Australian" television ads "depict[ing] Foster's as be-

ing a product from Australia by using Australian accents and scenery," *id.*; and (3) the official website for Foster's Beer, which, as of December 2015:

- Noted Foster's Beer is made out of hops that are only grown in three locations in Australia, and that "[t]hese hops and an exclusive Foster's yeast are what give Foster's its bold refreshing taste. The secret yeast doesn't produce sulfur harshness that other beers can exhibit, which means that Foster's taste is never skunky and always Australian," *id.* ¶ 13;

- Advertised, " 'Foster's is available in more than 150 countries, making it the largest-selling Australian beer brand in the world,' " *id*; and

- Displayed "an outline of the country of Australia, references to [the beer's] roots and history in Australia, and use of Australian symbols and phrases including 'How to Speak Australian,' 'Foster's—Australian for Beer,' and a video screen with images of rugby players," *id* ¶ 22.

Under Plaintiff's theory, MillerCoors engaged in deceptive conduct intending to capitalize on consumers' willingness "to pay a premium for high quality, imported beer." *Id.* ¶¶ 24–25. Plaintiff alleges that, between January 2012 and January 2015, he "purchased Foster's Beer in reliance on the representations contained on the packaging that the beer was imported from Australia and Foster's history of being an imported beer from Australia"—purchases he would not have made had he understood Foster's is now a domestically brewed and bottled beer. *Id.* ¶ 28. Plaintiff's alleged injury—economic loss from buying "beer that had less value than what he paid"—was thus "proximately caused by Defendant's misconduct." *Id.*

On June 3, 2016, Defendant filed its fully briefed motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Def.'s Mot. to Dismiss ("MTD"), ECF No. 16; *see also* Def.'s Request for Judicial Notice ("Notice Request"), ECF No. 17; Def.'s Reply ("Reply"), ECF No. 19; Pl.'s Mem. Opp'n ("Opp'n"), ECF No. 18.

## LEGAL STANDARD

■ To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A sufficiently pleaded complaint provides "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Indeed, a complaint that merely offers labels and conclusions, a formulaic recitation of the elements, or " 'naked assertions' devoid of 'further factual enhancement,' " will not survive a motion to dismiss. *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). At the motion-to-dismiss stage, this Court accepts all factual allegations in the Amended Complaint as true and draws all reasonable inferences in favor of Plaintiff, the nonmovant. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). But the Court need not credit "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 72 (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937) (alteration omitted). Rather, legal conclusions must be supported by factual allegations. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

■ Claims premised on fraud must meet Rule 9(b) of the Federal Rules of Civil Procedure's heightened pleading standard, which requires pleadings to "state with particularity the circumstances constituting the alleged fraud." With respect to Plaintiff's fraud claim, then, the Amended Complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).

## DISCUSSION

### I. Judicial Notice

■ Because both Plaintiff and MillerCoors attached various documents to their pleadings, the Court first assesses which are appropriate to consider for the purposes of the instant motion.[3] At the motion to dismiss stage, courts may consider "the factual allegations in plaintiffs' amended complaint, ... documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). The Federal Rules of Evidence further provide that courts may, on their own or at a party's request, "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be

---

**3.** While it is true that if, on a Rule 12(b)(6) motion to dismiss, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," Fed. R. Civ. P. 12(d), none of the materials the Court considers on the instant motion are extrinsic to the pleadings so as to warrant a Rule 12(d) conversion.

questioned." Fed. R. Evid. 201(b)—(c). Matters suitable for judicial notice include matters of public record, *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012), materials—such as product labels and packaging—referenced numerous times in the complaint, *Waldman v. New Chapter, Inc.*, 714 F.Supp.2d 398, 400 n.1 (E.D.N.Y. 2010) (Gordon, J.), and news articles, *Garber v. Legg Mason, Inc.*, 347 Fed.Appx. 665, 669 (2d Cir. 2009).

MillerCoors asks the Court to take judicial notice of "(1) certain Certificates of Label Approval ('COLA') applications reviewed and approved by the United States Alcohol and Tobacco Tax and Trade Bureau ('TTB'), and (2) certain news articles reporting on production of Foster's beer in the United States." Notice Request at 2. Plaintiff does not question the authenticity of any of these items, and relies on the images displayed in the COLAs in his Amended Complaint. Judicial notice is therefore appropriate because all items are matters of public record and there is no dispute as to their authenticity. *See Dumas v. Diageo PLC*, 15–CV–1681, 2016 WL 1367511, at *3 n.2 (S.D. Cal. Apr. 6, 2016) (taking judicial notice of Applications for Certificates of Label Approval); *Cruz v. Anheuser–Busch, LLC*, 14–CV–09670, 2015 WL 3561536, at *4 n.10 (C.D. Cal. June 3, 2015) (taking judicial notice of COLAs).

The Court also considers whether to take judicial notice of materials submitted as attachments to Plaintiff's opposition brief, specifically (1) "the findings of a survey that Plaintiff's counsel caused to be conducted" ("ORC Report"), and (2) TTB Form 5100.31, the generic COLA application. Opp'n Exs. 1, 3, ECF Nos. 18–2, 18–4. The Court takes judicial notice of Form 5100.31 because it is a public record and MillerCoors does not challenge its authenticity. But the Court declines to take judicial notice of the ORC Report. The ORC Report was neither incorporated by reference into nor attached to the Amended Complaint, as Plaintiff did not possess the report when he filed suit, nine months before the survey was taken; further, MillerCoors disputes the report's authenticity. Reply at 4–6.

## II. Motion to Dismiss

### A. Plaintiff's State Law Deceptive Acts and False Advertising Claims

■■■ Plaintiff brings deceptive advertising claims under New York GBL sections 349 and 350, which prohibit "[d]eceptive acts or practices in the conduct of any business" and "[f]alse advertising in the conduct of any business," respectively. A "deceptive act" is any act "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (internal quotation marks omitted) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995)). This broad definition encompasses MillerCoors's dissemination of the materials Plaintiff pleaded reliance on, namely Foster's Beer packaging, including the labels, and historical information about Foster's Beer. Am. Compl. ¶ 28. MillerCoors contends, first, that Plaintiff's GBL claims are barred under applicable safe harbor provisions, and second, even if they are not, the claims are objectively unreasonable. Because the Court determines no reasonable consumer would be deceived by the advertisements, the Court need not determine whether the safe-harbor provisions apply.

■■■ To establish a *prima facie* case under either section 349 or 350, "a plaintiff must demonstrate that '(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material

way, and (3) the plaintiff has been injured as a result.' " *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F.Supp.2d 439, 450 (E.D.N.Y. 2007) (Amon, J.) (quoting *Maurizio*, 230 F.3d at 521); *see also id.* at 451 (noting "standards under both sections are substantively identical"). The reasonable consumer standard applies to section 349 and 350 claims, meaning challenged conduct must be "materially deceptive or misleading 'to a reasonable consumer acting reasonably under the circumstances.' " *Dash v. Seagate Tech (U.S.) Holdings, Inc. (Dash I)*, 27 F.Supp.3d 357, 360 (E.D.N.Y. 2014) (Wexler, J.) (quoting *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F.Supp.3d 467, 478 (S.D.N.Y. 2014) (Román, J.)).

▉ MillerCoors argues Plaintiff's claims must be dismissed because the allegedly deceptive representations would not have misled a reasonable consumer.[4] Specifically, MillerCoors argues that "[n]either the labeling that Plaintiff claims to have encountered, nor the oblique 'history' of the brand, makes any express claim that the MillerCoors product is brewed in, and/or imported from, Australia" and that "[t]he label explicitly states that it is not." MTD at 11. Plaintiff first

counters that this question is not appropriate for a motion to dismiss. But "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). Plaintiff further argues that the disclosure as to brewing location does not remedy the confusion caused by the rest of the challenged representations. The idea that consumers purchase products based on certain of a label's statements or images (e.g., pictures of a constellation and a kangaroo) but are blind to others (e.g., a statement in plain English of where Foster's Beer is brewed) in close proximity on that label strains credibility.

▉ The Second Circuit has made it clear that "the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Fink*, 714 F.3d at 742; *see also Fermin v. Pfizer Inc.*, 15–CV–2133, 215 F.Supp.3d 209, 212, 2016 WL 6208291, at *2 (E.D.N.Y. Oct. 18, 2016) (Johnson, J.) (dismissing case alleging size of Advil containers was deceptive on ground it would "def[y] logic to accept that the reasonable consumer would not rely

4. The Court considers only the representations on which Plaintiff pleaded reliance: the Foster's Beer labels and "Foster's history of being an imported beer," illustrated by the screenshots of the Foster's Beer website appended to the Amended Complaint that include, among other things, the slogan "Foster's—Australian for Beer," an outline of the country of Australia, and the text "How to Speak Australian." Am. Compl. at 29–30. Courts have a duty, under the reasonable consumer standard, to consider allegedly deceptive statements in the broader context of advertising. *Cf. Stoltz v. Dairy Farm Processing Indus. S.A.*, 14–CV–3826, 2015 WL 5579872, at *16 (E.D.N.Y.) (Brodie, J.) (noting courts' duty to consider representations in their "surrounding context based on the content of the entire label or advertisement at issue"). But "[c]ausation is an 'essential' element," so a

plaintiff must "individually plead [each of] the disclosures he or she received were inadequate, misleading, or false, and that she was injured as a result of the insufficient or false disclosures." *Belfiore v. Procter & Gamble Co.*, 94 F.Supp.3d 440, 446 (E.D.N.Y. 2015) (Weinstein, J.). Plaintiff urges the Court to look also at "Foster's beer's advertising scheme and history," Opp'n at 10, but the Court cannot do so because Plaintiff never claims he saw—let alone relied on—a single one of these advertisements, *see* Am. Compl. ¶ 28. Absent reason or justification to consider the advertising campaign, the Court need not determine whether the YouTube compilation of what are presumably authentic Foster's "How to Speak Australian" campaign ads was incorporated into the Amended Complaint by reference through a hyperlink in a footnote.

upon the stated pill count"). Whether or not a disclaimer defeats a claim of deception requires an analysis of "factors such as the font size and placement of the disclaimer as well as the relative emphasis placed on the disclaimer and the allegedly misleading statement." *Stoltz*, 2015 WL 5579872, at *16. Plaintiff's argument as to the inadequacy of the Foster's Beer disclaimers relies on the Ninth Circuit's decision in *Williams v. Gerber Products. Co.*, in which the court stated "reasonable consumers should not be expected to look beyond misleading representations on the front of the box to discover the truth from the [disclaimer] ... in small print on the side of the box." 552 F.3d 934, 939 (9th Cir. 2008). But Plaintiff's argument ignores the general rule, articulated by *Williams* and other cases, that disclaimers fail to cure allegedly misleading representations on the front of packaging only where the alleged misrepresentation is clearly stated and the disclaimer is exceedingly vague or requires consumers to make inferences. *Id.*

The *Williams* plaintiffs argued Gerber's trustworthy brand name and the Fruit Juice Snacks packaging—which included: (1) "the words 'Fruit Juice' alongside images of fruits such as oranges, peaches, strawberries, and cherries"; (2) a description of the snacks as being "made 'with real fruit juice and other all natural ingredients'"; (3) a statement that the snacks were "'one of a variety of nutritious Gerber Graduates foods and juices'"; (4) the product's label as a snack and not a "'candy,' 'sweet,' or a 'treat'"; and (5) "the phrase 'naturally flavored[,]' [which] did not comply with applicable type size requirements"—were deceptive. *Id.* at 936–37. On appeal from the district court's dismissal of plaintiffs' claims, the Ninth Circuit explained that the packaging's ingredient panel did not clarify for consumers that the product contained unnatural ingredients and was therefore insufficient to counter the numerous "features of the

packaging Gerber used ... [that] could easily be interpreted by consumers as a claim that all the ingredients in the product were natural, which appears to be false," and that the product itself was healthy. *Id.* at 939. An effective disclaimer would have "explicitly stated" the relevant information such that it would be "impossible" for those who viewed it to be deceived. *Id.*; *see also In re Frito-Lay North America, Inc. All Natural Litigation*, 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013) (citing *Williams* in distinguishing between viable deception claim where ingredient list did not prevent consumers from being able to "reach a variety of conclusions about" whether product contained genetically modified ingredients, and nonviable claim where consumers could "check the ingredients list to confirm" beliefs developed based on packaging's pictures).

Foster's Beer labels contain an explicit disclaimer as to the place of production— "BREWED AND PACKAGED UNDER THE SUPERVISION OF FOSTER'S AUSTRALIA LTD, MELBOURNE, AUSTRALIA BY OIL CAN BREWERIES, ALBANY GA AND FORT WORTH TX" is displayed on every bottle and can— so consumers need not read a long list of items and make inferences as to the beer's place of origin, as the *Williams* plaintiffs did. Further, "© Oil Can Breweries, Fort Worth, TX" is displayed on the Foster's webpage, which is inarguably clear as to the brewing location. *See Frito–Lay*, 2013 WL 4647512, at *16 ( No reasonable consumer could view the Cap'n Crunch with Crunchberries and Froot Loops boxes and conclude that these products contain fruit, and then check the ingredients list to confirm this belief.). Contrary to Plaintiff's assertion, this is not a case like *Marty v. Anheuser–Busch Cos., LLC*, where "the 'Product of USA' disclaimer, [wa]s not visible to the consumer at the time of purchase." 43 F.Supp.3d 1333, 1344 (S.D. Fla.

2014). Unlike the product at issue in *Marty*, Foster's Beer "utilizes no exterior packaging" that would obstruct the disclaimer. MTD at 14. Nor is this a case like *Singleton*, in which the court found that a disclaimer explaining the allegedly misleading "handmade" claim was "not on the labels." 2016 WL 406295, at *10. Rather, every single representation Plaintiff pleaded reliance on, across every medium, is accompanied by language indicating the beer is brewed in the United States. In sum, the images of a kangaroo and a constellation "and allusion to the company's historic roots in [Australia] are eclipsed by the accurate disclosure statement." *Bowring v. Sapporo U.S.A., Inc.*, 16–CV–1858, 234 F.Supp.3d 386, 391, 2017 WL 902151, at *4 (E.D.N.Y. Feb. 10, 2017) (Glasser, J.). Accordingly, Defendant's motion to dismiss the Amended Complaint's second and third causes of action is GRANTED.

## B. Standing Under the ICFA

Next, MillerCoors argues that Plaintiff lacks standing to bring a claim under the ICFA, which prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, [or] misrepresentation." 815 ILCS § 505/2. The ICFA's extraterritorial reach is extremely limited. *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396 (7th Cir. 2009). Specifically, the ICFA applies to nonresident claimants only "if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Avery v. State Farm Mutual Insurance Co.*, 216 Ill.2d 100, 296 Ill.Dec. 448, 835 N.E.2d 801, 854 (2005). In conducting this highly fact-specific inquiry, courts should consider:

(1) the claimant's residence; (2) the defendant's place of business; (3) the location of the relevant item that is the subject of the disputed transaction; (4) the location of the claimant's contacts with the defendant; (5) where the contracts at issue were executed; (6) the contract's choice of law provisions, if there are any; (7) where the allegedly deceptive statements were made; (8) where payments for services were to be sent; and (9) where complaints about the goods or services were to be directed.

*Haught v. Motorola Mobility, Inc.*, 12–CV–2515, 2012 WL 3643831, at *3 (N.D. Ill. Aug. 23, 2012).

Courts have applied this framework and declined to confer standing on nonresident plaintiffs in circumstances similar to those at bar. In *Chrichton v. Golden Rule Insurance Co.*, a nonresident plaintiff did not have standing to bring an ICFA claim against an Illinois-based insurance company because the plaintiff viewed the defendant's promotional materials and bought and renewed the at-issue insurance policy in Florida. 576 F.3d at 397. In *Phillips v. Bally Total Fitness Holding Corp.*, nonresident plaintiffs did not have standing to bring an ICFA claim against Illinois-headquartered Bally because they bought health-club memberships and used Bally's health clubs in Colorado and Missouri. 372 Ill.App.3d 53, 309 Ill.Dec. 947, 865 N.E.2d 310, 315–16 (2007). And in *Haught v. Motorola Mobility, Inc.*, a nonresident plaintiff did not have standing to bring an ICFA claim against Illinois-headquartered Motorola for alleged misrepresentations "designed in Illinois and disseminated on a website registered and hosted in Illinois" because he purchased his phone "from a third-party vendor outside of the State of Illinois" and never alleged that he viewed any of Motorola's representations within the State of Illinois. 2012 WL 3643831, at *4. These cases turned on a weak connection between the relevant transaction and the State of Illinois. The Court finds a similarly attenuated connection here. Mil-

lerCoors is headquartered in Illinois,[5] but Plaintiff resides in New York, viewed the alleged misrepresentations in New York, and then purchased Foster's Beer in New York. Am. Compl. ¶¶ 4–5, 28.

Plaintiff points to several cases in which courts found nonresident plaintiffs had standing under the ICFA, but these cases do not save his argument. In *International Trading Equipment, Ltd. v. AB SCIEX LLC*, the court relied on the fact that, though the majority of relevant transactions involved customers outside of Illinois, the damages from the alleged misconduct in those transactions "flowed to Illinois" because the injured party was an Illinois corporation. 13–CV–1129, 2013 WL 4599903, at *11 (N.D. Ill. Aug. 29, 2013). But here, Plaintiff's alleged injury occurred in New York.[6] Am. Compl. ¶ 28. In *West v. Act II Jewelry, LLC*, the court relied on alleged purchases of supplies directly from Illinois. 15–CV–5569, 2016 WL 1073095, at *2 (N.D. Ill. Mar. 18, 2016). But here, Plaintiff purchased Foster's Beer in New York, from a third-party vendor.[7] Am. Compl. ¶ 28. And in *Al Maha Trading & Constr. Holding Co. v. W.S. Darley & Co.*, the court relied on the fact that contact between plaintiff and defendant was made in Illinois and payments were sent directly to Illinois. 12–CV–1920, 2014 WL 2459674, at * 10 (N.D. Ill. June 2, 2014). But here, Plaintiff purchased Foster's Beer in New York without directly contacting the MillerCoors headquarters

and he did not send payment directly to the MillerCoors headquarters. *See generally* Am. Compl. Because the circumstances of the transaction at issue here are distinguishable from *International Trading Equipment, West,* and *Al Maha,* and substantially similar to the transactions in *Chrichton, Phillips,* and *Haught,* Defendant's motion to dismiss the Amended Complaint's first cause of action is GRANTED.

### C. Negligent Misrepresentation and Fraud Claims

Negligent misrepresentation and fraud both require the plaintiff to plead the existence of some misrepresentation. Specifically, to assert a claim for negligent misrepresentation, a plaintiff must plead facts showing (1) the defendant owed plaintiff "a duty of care due to a 'special relationship'"; (2) the defendant "knew or should have known that [its] representations were false"; (3) the defendant "knew or should have known that the [plaintiff] would rely on those misrepresentations"; and (4) the plaintiff "in fact relied on those misrepresentations to [his] detriment." *Hydro Investors, Inc. v. Trafalgar Power Inc.,* 227 F.3d 8, 20 (2d Cir. 2000). To state a claim for fraud under New York law, a plaintiff must allege facts showing "(1) a misrepresentation or a material omission of fact which was false and known to be false by defendant, (2) made for the purpose of inducing the other party to rely

---

**5.** Plaintiff suggests in his brief that "Defendant devised the fraudulent marketing and labeling" and otherwise "made key decisions concerning the place of production of Foster's beer in Illinois." Opp'n at 19. These allegations were not properly pleaded, but even had they been, this would not sufficiently distinguish the instant case from *Haught* such that Plaintiff would have standing. 2012 WL 3643831, at *4.

**6.** Plaintiff filed a putative class complaint on behalf of class members from across the na-

tion, but the Amended Complaint pleads only facts sufficient to make out a claim of injury in New York. *See generally* Am. Compl.

**7.** Indeed, there is no indication the beer Plaintiff purchased ever went through Illinois, as it was brewed and bottled in Texas. Plaintiff argues in his brief that Foster's Beer's advertising scheme was crafted in Illinois, but this was not alleged in the Amended Complaint. *See generally* Am. Compl.

upon it, (3) justifiable reliance of the other party on the misrepresentation or material omission, and (4) injury." *Premium Mortg. Corp. v. Equifax, Inc.,* 583 F.3d 103, 108 (2d Cir. 2009) (quoting *Lama Holding Co. v. Smith Barney Inc.,* 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996)).

▮ As the Court concluded above, MillerCoors did not misrepresent the place Foster's Beer is produced. Accordingly, Defendant's motion to dismiss the Amended Complaint's fourth and fifth causes of action is GRANTED.

### D. Breach of Express Warranty

▮ MillerCoors seeks to dismiss Plaintiff's claims for breach of express warranty on the ground that no such warranty existed. Generally, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise. N.Y. U.C.C. § 2–313(1)(a).[8] And "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description. *Id.* § 2–313(1)(b). Where there are conflicting warranties, however, "the specific terms . . . must inform the more general term." *Chin v. General Mills, Inc.,* 12–CV–2150, 2013 WL 2420455, at *7 (D. Minn. June 3, 2013) (citing N.Y. U.C.C. § 2–317); *see also* N.Y. U.C.C. § 2–317 ("Exact or technical specifications displace an inconsistent sample or model or general language of description.).[9] Even assuming that, taken together, the images of a kangaroo and the Southern Cross constellation, the brand slogan, and the Foster's Beer website "are sufficient affirmations of fact or promises to support a claim for breach of express warranty," Plaintiff's claim must fail because the labels explicitly identify where Foster's Beer is brewed. Opp'n at 22.[10]

8. Plaintiff alleges MillerCoors violated the warranty laws of 44 states. Am. Compl. ¶ 88. Despite moving to dismiss the entire Amended Complaint, MillerCoors briefed the issue under New York law only and Plaintiff responded without mentioning any other claims. This is an astonishing oversight given the fact that the issue turns on whether an express warranty was created, making each applicable state statute central. Notwithstanding the shortcomings in the parties' submissions, the Court observes that the cited provisions are functionally identical.

9. The following provisions from each of the statutory codes referenced in the Amended Complaint contain identical language: Alaska Stat. Ann. § 45.02.317; Ariz. Rev. Stat. Ann. § 47–2317; Ark. Code Ann. § 4–2–317; Cal. Com. Code § 2317; Colo. Rev. Stat. Ann. § 4–2–317; Conn. Gen. Stat. Ann. § 42a–2–317; Del. Code Ann. § 2–317; D.C. Code Ann. § 28–2–317; Ga. Code Ann. § 11–2–317; Haw. Rev. Stat. Ann. § 490:2–317; Idaho Code Ann. § 28–2–317; 810 ILCS 5/2–317; Ind. Code Ann. § 26–1–2–317; Kan. Stat. Ann. § 84–2–317; Ky. Rev. Stat. Ann. § 355.2–317; Me. Stat. Ann. tit. 11, § 2–317; Mass. Gen. Laws Ann. Ch. 106, § 2–317; Minn. Stat. Ann. § 336.2–317; Miss. Code Ann. § 75–2–317; Mo. Ann. Stat. § 400.2–317; Mont. Code Ann. § 30–2–313; Neb. U.C.C. § 2–317; Nev. Rev. Stat. Ann. § 104.2317; N.H. Rev. Stat. Ann. § 382–A:2–317; N.J. Stat. Ann. § 12A:2–317; N.M. Stat. Ann. § 55–2–317; N.C. Gen. Stat. Ann. § 25–2–317; N.D. Cent. Code. Ann. § 41–02–34; Ohio Rev. Code Ann. § 1302.33; Okla. Stat. Ann. Tit. 12A § 2–317; Or. Rev. Stat. Ann. § 72–3170; 13 Pa. Stat. and Cons. Stat. Ann. § 2317; R.I. Gen. Laws Ann. 1956 § 6A–2–317; S.C. Code Ann. § 36–2–317; S.D. Codified Laws § 57A–2–317; Tenn. Code Ann. § 47–2–317; Tex. Bus. & Com. Code Ann. § 2.317; Utah Code Ann. § 70A–2–317; Vt. Stat. Ann. Tit. 9A, § 2–317; Va. Code Ann. § 59.1–504.8; Wash. Rev. Code Ann. § 62A.2–317; W. Va. Code Ann. § 46–2–317; Wyo. Stat. Ann. § 34.1–2–317.

10. To the extent Plaintiff attempts to again argue that a reasonable consumer is not expected to review back label disclosures when there are front label misrepresentations, that argument has been addressed above, *see supra* II.A.

Accordingly, Defendant's motion to dismiss the Amended Complaint's sixth cause of action is GRANTED.

### E. Unjust Enrichment

 MillerCoors argues Plaintiff's unjust enrichment claim must be dismissed as duplicative because it is premised on the same allegations as those set forth in support of Plaintiff's other claims. "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006). New York law does not allow claims for unjust enrichment to serve as "catchall cause[s] of action to be used when others fail." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790, 944 N.Y.S.2d 732, 967 N.E.2d 1177 (2012).

 It is certainly true, as Plaintiff argues, that he may plead unjust enrichment in the alternative to his other claims. *E.g., Burton v. Iyogi, Inc.*, 13–CV–6926, 2015 WL 4385665, at *11 (S.D.N.Y. Mar. 16, 2015) (Batts, J.). But it is equally true that, even pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action. *Ebin v. Kangadis Food Inc.*, 13–CV–2311, 2013 WL 6504547, at *7 (S.D.N.Y. Dec. 11, 2013) (Rakoff, J.), *see also Stoltz*, 2015 WL 5579872, at *27 (dismissing unjust enrichment claim "based on the same allegations" as another claim). Because Plaintiff's unjust enrichment claim relies on the same facts as his other causes of action in tort, Defendant's motion to dismiss the Amended Complaint's seventh cause of action is GRANTED.

### F. Leave to Amend

 Finally, MillerCoors argues the Court should deny Plaintiff leave to amend his Amended Complaint because he cannot cure its deficiencies. Rule 15(a)(2) of the Federal Rules of Civil Procedure allows a party to amend its pleadings at any time with the court's leave. In making this determination, a district court has great discretion, *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007), but the Second Circuit has established a "permissive standard" consistent with its "strong preference for resolving disputes on the merits," *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (per curiam) (quoting *New York v. Green*, 429 F.3d 99, 104 (2d Cir. 2005)). Furthermore, absent "the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). In light of the foregoing, Defendant's request that the Court deny Plaintiff leave to amend the Amended Complaint is DENIED.

### CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is hereby GRANTED. Plaintiff's Amended Complaint is dismissed in its entirety, but Plaintiff may move to amend its Complaint consistent with Rule 15(a). The Clerk of Court is directed to enter judgment and to close the action.

**SO ORDERED.**